This appeal, by the Honorable Fob James, as Governor of the State of Alabama, challenges the order of the Montgomery Circuit Court directing him to issue to Appellee Charlie Will Thompson a commission as supernumerary sheriff of Randolph County under the provisions of Act 79-357, Acts 1979 (§36-22-60 et seq. Code 1975).
A single issue is presented: Whether Thompson, who meets the age and tenure in office requirements of § 36-22-60, but who stands convicted of a felony (voting fraud), is entitled to a commission as supernumerary sheriff. We resolve the question adversely to Thompson; thus, we reverse and render.
This case was submitted to the trial court upon a stipulation of facts, which states in pertinent parts:
 "4. On and prior to September 13, 1979, Plaintiff was Sheriff of Randolph County, Alabama, and had been elected to such position and served as such continuously since January, 1963, a period of more than 16 years.
 "5. On September 13, 1979, Plaintiff filed with Defendant a written declaration of election to become a supernumerary sheriff under the provisions of Act No. 79 357, supra. . . .
 "6. Prior to September 13, 1979, criminal proceedings were instituted against Plaintiff in the United States District Court for the Middle District of Alabama for conspiring to violate the election laws of the United States [42 U.S.C. § 1973i (c) and 18 U.S.C. § 2] in violation of 18 U.S.C. § 371, and knowingly and willfully paying or offering to pay voters to vote in an election in violation of 42 U.S.C. § 1973i (c), and 18 U.S.C. § 2. . . .
 "7. . . . [On September 14, 1979,] Plaintiff was found guilty by the jury, adjudged guilty by the trial court and was thereafter sentenced to serve a term in the federal penitentiary. . . .
 "8. Based upon the said judgment of guilty and sentence . . . Defendant James refused to issue to Plaintiff a Commission as Supernumerary Sheriff.
"9. . . .
 "10. Plaintiff appealed the aforementioned judgment of conviction to the United States Court of Appeals for the Fifth Circuit. Said Court reversed Count V and affirmed the judgment as to the other counts."
Act No. 79-357, Acts of Alabama 1979, the legislative enactment providing for the appointment and designation of supernumerary sheriffs, prescribes:
 "Section 1. Any sheriff . . . may elect to participate in the supernumerary sheriff's program provided by this act. . . .
 "(b) who has had sixteen (16) years of service credit as a law enforcement officer, twelve (12) of which have been as a sheriff, and who has reached the age of fifty-five (55) years . . . by filing a written declaration to that effect with the Governor. . . .
". . .
 "Section 6. Each supernumerary sheriff shall take the oath of office prescribed for sheriffs and shall be subject to call by the governor in the event of a vacancy in the office of the sheriff." *Page 1180 
The trial court, in ordering the Governor to issue the Commission, held that Thompson "is entitled as a matter of law to assume the office of supernumerary sheriff as set out in Act No. 79-357 of the Alabama legislature." We hold that Thompson, upon his conviction of the infamous crime of voting fraud, became ineligible and disqualified from holding the office of supernumerary sheriff. Section 60 of the Constitution of Alabama 1901 provides:
 "No person convicted of embezzlement of the public money, bribery, perjury, or other infamous crime, shall be eligible to the legislature, or capable of holding any office of trust or profit in this state."
The error of the trial court's ruling is implicit in the very wording of its order. That is, its reference to "the office of supernumerary sheriff' holds the key to the appropriate resolution of the issue presented. The legislature, in creating a supernumerary program for elected sheriffs in Alabama, necessarily created the office of supernumerary sheriff. Although the duties of such office are limited in scope and the performance of such duties are contingent and narrowly defined, the statutorily prescribed position and function of a supernumerary sheriff is that of a public office — an "office of trust [and] profit." Otherwise, the compensation provisions of the Act clearly would run afoul of § 98 of our State Constitution, which proscribes any legislative grant ofretirement pay to public officers.
Moreover, our disposition of the instant appeal is aided by the literal meaning of the word "supernumerary." The word is derived from two Latin words — super, above or beyond; andnumerus, a number. Thus, these two words, when used in combination and translated, mean exceeding a prescribed number. The legislative employment of this term, as a means of providing compensation to public officials conditioned upon age and length of service, created an office of public trust with duties and responsibilities concomitant with its purpose and design. While its members are above and beyond the numbers prescribed for active sheriffs, and its duties are limited and contingent by its nature, its character is not reduced to something less than that of a public office. Indeed, the Act provides that each supernumerary sheriff shall take the oath of office prescribed for sheriffs.
REVERSED AND RENDERED.
TORBERT, C.J., and MADDOX, SHORES and BEATTY, JJ., concur.